STEVENSON *v*. THE STATE.

The sounder and safer construction of section 4372 of the code, which makes it a misdemeanor to use obscene and vulgar language in the presence of a female, is that the use of spoken words only is contemplated. But if the section embraces written as well as spoken words, to render the writing or its contents admissible in evidence on the trial of the accused, it is necessary that the indictment should allege that the words were written and describe with reasonable certainty the instrument of writing which contained them.

October 8, 1892.

Criminal law. Indictment. Before Judge MILNER. Catoosa superior court. August term, 1892.

R. J. & J. McCAMY, by brief, for plaintiff in error.

A. W. FITE, solicitor-general, *contra*.

BLECKLEY, Chief Justice.

The statute on which the indictment is founded reads

thus: "Any person who shall, without provocation, use to or of another, and in his presence, opprobrious words or abusive language tending to cause a breach of the peace, or who shall, in like manner, use obscene and vulgar or profane language in the presence of a female, or by indecent or disorderly conduct in the presence of females on passenger cars, street cars, and other places of like character, shall be guilty of a misdemeanor, and on conviction shall be punished as prescribed in section 4310 of this code; provided, no court in this State shall have jurisdiction to inquire into offences set forth in this section that are committed in any other place than on passenger cars, street cars, and other places of like character, except upon presentment made, or indictment found, by the grand jury of the county in which the offence has been committed." Code, §4372, as amended by act of December 29th, 1890. (Acts 1890–91, p. 83.)

The words charged in the indictment are grossly obscene and vulgar. They are charged as having been used in the presence of a female, naming her. The evidence shows that they were not used otherwise than as follows: The accused was a boy and the female a girl attending the same school, of which the teacher was a lady. The boy, in passing by the girl in the schoolroom, threw into her lap a folded note containing the obnoxious words written inside. She, being unable to read the note, handed it to another girl who carried it to the teacher, all the persons just named then being in the same room. The teacher, having read it, delivered it some time afterwards to the boy's father, who read it and subsequently lost it. By him the contents were proved at the trial. So far as appears, the girl mentioned in the bill of indictment as the female in whose presence the words were used, never heard the note read by any one and never had any knowledge of its con-

tents. It is manifest, therefore, that, although the words as written language were used in her physical presence, they never reached her mental presence at all as signs of obscene thoughts or ideas.

But what does the statute mean by the terms "use obscene and vulgar language in the presence of a female"? In solving this question, the words of the enactment are to be taken in their ordinary signification, and in their light we are to look diligently for the intention of the General Assembly, keeping in view the old law, the evil and the remedy. Code, §4, pars. 1 & 9. We can have little or no doubt that the ordinary sense which attaches to the phrase " using language in the presence of another " is that the use is by speech, unless one or both of the parties, by reason of some deficiency or infirmity, would not ordinarily or habitually communicate in that way. It is true that the word "language" is broad enough to include words written as well as words spoken. But the mischief which we think the legislature had in mind was the use of dirty spoken language, and there is little probability that written language was in the legislative contemplation. The mischief of vulgar and obscene speech is one common enough to invite legislative interference to suppress it. But writing to females in such language is, we apprehend, very rare, so rare as to render it probable that, if the legislature had intended to embrace it, the statute would have been so framed as to leave no uncertainty. The formula adopted would probably have been some such expression as this : "If any person shall, either orally or in writing," etc.

If the statute as it stands could be construed as having this breadth, we think that the *prima facie* meaning of an indictment charging merely the use of forbidden language, would be that it was used orally; and if the design was to prove that it was used in writing, it would

be necessary, on the principles of sound criminal pleading, to allege the writing and describe it. In order to be prepared for his defence, the accused ought to be made aware that he was charged with executing or delivering the offensive writing, and its contents ought to be recited so as to put him fairly on notice that a writing and its contents would come in question at the trial.

The court erred in admitting in evidence anything touching the writing or the language contained in it.

*Judgment reversed.*