**Johnny C. WILSON**

**v.**

**Millard GOODING, Warden of the Richmond County, Georgia, Public Works Camp.**

**Civ. A. No. 12511.**

United States District Court
N. D. Georgia,
Atlanta Division.

July 8, 1969.

Appeal Dismissed Dec. 8, 1969.
See 90 S.Ct. 397.

Howard Moore, Jr., Peter E. Rindskopf, Atlanta, Ga., for plaintiff.

Arthur K. Bolton, Atty. Gen. State of Georgia, Atlanta, Ga., for defendant.

SIDNEY O. SMITH, Jr., District Judge.

■■ In this writ of habeas corpus petitioner seeks to set aside his conviction on a number of grounds. The Court, in an order dated March 4, 1969, concluded that petitioner had not exhausted his available state remedies as to contentions raised in paragraphs 6b, 7, 8, and 9 of the writ. The Court concluded that petitioner had exhausted his remedies as to the contention raised in paragraphs 5 and 6(a), attacking his conviction on the grounds of the alleged unconstitutionality of Georgia Code § 26–6303. The Court also concluded that petitioner's failure to utilize a direct appeal to the United States Supreme Court under 28 U.S.C. § 1257 did not constitute a bar to this proceeding. Accordingly, this order will not deal with the alleged unconstitutional application of this statute nor any of the other points raised in the writ, except for the facial unconstitutionality of Georgia Code § 26–6303.

Georgia Code § 26–6303 provides in relevant part:

Any person who shall, without provocation, use to or of another, and in his presence * * * opprobrious words or abusive language, tending to cause a breach of the peace * * * shall be guilty of a misdemeanor.

The question of constitutionality of this statute is exceedingly complex and difficult. None of the reported cases that have come to this Court's attention have dealt with the precise issues presented herein, yet many cases have dealt with at least some aspects of the instant statute. First Amendment rights have assumed a protected place in our jurisprudence. Great care must be taken in this area to assure that vague or overbroad laws do not infringe upon these rights. See, e. g., Ashton v. Kentucky, 384 U.S. 195, 86 S.Ct. 1407, 16 L.Ed.2d 469 (1966); Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Since speech is normally intended to change the opinions or reinforce the opinions of others, problems arise as to the extent to which mere speech may be curbed when it provokes others into action. The cases reflect the view that peaceful expression of even unpopular views is permitted and even encouraged.

[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech * * * is * * * protected

against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.
\* \* \*

Terminiello v. Chicago, 337 U.S. 1, 4–5, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1948). In a recent decision the Supreme Court has taken a further step in elaborating upon the above language.

[T]he constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing lawless action and is likely to incite or produce such action. As we said in Noto v. United States, 367 U.S. 290, 297–298 [81 S.Ct. 1517, 1520–1521, 6 L.Ed.2d 836] (1961), "the mere abstract teaching \* \* \* of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action and steeling it to such action." See also Herndon v. Lowry, 301 U.S. 242, 259–261 [57 S.Ct. 732, 739–740, 81 L.Ed. 1066] (1937); Bond v. Floyd, 385 U.S. 116, 134 [87 S.Ct. 339, 348, 17 L.Ed.2d 235] (1966).

This decision in Brandenburg v. State of Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (June 9, 1969) logically followed from the Court's earlier decisions in Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); De Jonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278 (1937); Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). But a speaker sometimes passes the bounds of argument and persuasion and undertakes incitement to riot. See, e. g., Feiner v. New York, 340 U.S. 315 at 321, 71 S.Ct. 303, 95 L.Ed. 267 (1950). The above distinction, while easily stated, is not so easily applied to a given factual situation. What is clear, however, is the fact that the Supreme Court will not allow intrusions into this protected area.

For standards of permissible statutory vagueness are strict in the area of free expression. \* \* \* Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity.

N.A.A.C.P. v. Button, 371 U.S. 415 at 432–433, 83 S.Ct. 328, at 337–338, 9 L.Ed.2d 405 (1963). Thus, in Ashton v. Kentucky, *supra,* the Court struck down a statute prohibiting " \* \* \* any writing calculated to create disturbances of the peace \* \* \*." In Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949), the Court struck down an ordinance forbidding any "breach of the peace" where the trial judge instructed the jury that any misbehavior which "stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance." violated the ordinance. Clearly, a statute may not involve "calculations as to the boiling point of a particular person or a particular group," but must involve "an appraisal of the nature of the comments *per se.*" Ashton v. Kentucky, *supra* 384 U.S. at 200, 86 S.Ct. at 1410. Numerous other decisions have overturned breach of the peace statutes and related statutes where the offense was improperly or imprecisely defined. See, e. g., Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); Hunter v. Allen, 286 F.Supp. 830 (N.D. Ga.1968); University Committee to End The War In Viet Nam v. Gunn, 289 F.Supp. 469 (W.D.Tex.1968); Baker v. Bindner, 274 F.Supp. 658 (W.D.Ky. 1967); Ware v. Nichols, 266 F.Supp. 564 (N.D.Miss.1967); Carmichael v. Allen, 267 F.Supp. 985 (N.D.Ga.1967).[1]

1. In *Carmichael, supra,* the Court noted: \* \* \* [I]t takes no elaboration to demonstrate that the term "vulgar" in connection with "language", and the use of the term "tending to disturb the good order, morals, \* \* \* or dignity of the City" leaves "to the executive and judicial branches too wide a discre-

Having generalized as to the legal background in this area, the Court is now faced with a decision as to the constitutionality of Georgia Code § 26–6303. Defendant argues that the phrases "opprobrious words" and "abusive language" have a well defined meaning in the Georgia law and are not so broad as to impinge upon protected areas. In construing this code section the Courts have held that the words of the enactment are to be taken in their ordinary signification. Stevenson v. State, 90 Ga. 456, 16 S.E. 95 (1892). The Georgia Courts have definitely established that grimaces or facial expressions of contempt do not constitute "opprobrious words or abusive language." Behling v. State, 110 Ga. 754, 36 S.E. 85 (1900). In Fish v. State, 124 Ga. 416, 52 S.E. 737 (1905), the Court reversed a trial judge's instructions that as a matter of law certain words were opprobrious and abusive, stating that this as well as whether it was calculated to cause a breach of the peace were questions for the jury. This holding appears to be contrary to the holding of the Georgia court in the instant case that the words used by the petitioner were opprobrious and abusive per se. Again in Jackson v. State, 14 Ga.App. 19, 80 S.E. 20 (1913), the court stated that this was a question for the jury, but again failed to define these terms. The decision in Dillard v. State, 41 Ga. 278 (1870) deals only with the provision as to the use of obscene or vulgar language in the presence of a female. Thus, in the decisions brought to this Court's attention, no meaningful attempt has been made to limit or proper-

ly define these terms. Some courts have approved reference to a standard dictionary to define statutory terms. E. g., United States v. Strong, 263 F. 789, 796 (W.D.Wash.). According to Websters' New International Dictionary (2d Ed. 1941), opprobrious means: "Expressive of opprobrium; attaching disgrace; reproachful; scurrilous. * * *" Synonyms include "disgraceful, abusive, insulting, offensive." The same work lists as synonyms for insulting, the terms "insolent and offensive." Thus, in the dictionary sense of these phrases, they both include the words that are offensive, thus arguably encroaching upon the mandates of Brandenburg, supra, Ashton, supra, and Terminiello, supra. There is dicta in Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) that certain epithets, profane and indecent in nature, would not be protected. The case of Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) suggests that "fighting words" may result in punishment.[2] Moreover, this Court does not see any policy reasons for upholding the right of a person to use the type of language expressed by this petitioner. It strains the concept of freedom of speech out of proportion when it is argued that such language is and should be protected. However, this consideration is really not relevant to the present inquiry, except to suggest that a narrowly and precisely defined statute could have reached this sort of speech. The fault of the statute is that it leaves wide open the standard of responsibility, so that it is easily susceptible to improper

tion in the application" of the law. It too readily permits them to make a crime out of what is protected activity.
Id. at 998–999.
In Hunter v. Allen, supra, while commenting upon Atlanta's disorderly conduct statute, the Court observed:
In short, the standards are overwhelmingly subjective. What is an "angry threat"? What is "abusive" conduct? What is "roughly crowding"? What is a "dangerous manner"? The reaction of some unknown third party could deter-

mine the guilt or innocence of the accused.
Id. 286 F.Supp. at 836.

2. However, the Higher courts have thus far failed to provide a precise standard themselves. Such expression is needed if the lower courts are to be continually called upon to inquire into the validity of similar state statutes and local ordinances. Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940) gives the most likely basis, insofar as it is still valid.

application. The State argues that the statute is saved by the adding requirement of "tending to breach the peace." This is a persuasive argument until one reads the decision in Ashton v. Kentucky, *supra,* wherein the Court states in reference to Edwards v. South Carolina, *supra,* and Cox v. Louisiana, *supra:*

> These decisions recognize that to make an offense of conduct which is "calculated to create disturbances of the peace" leaves wide open the standard of responsibility.

*Id.* 384 U.S. at 200, 86 S.Ct. at 1410. Moreover in Cox v. Louisiana, *supra,* 379 U.S. at 551, 85 S.Ct. at 462, the Court struck down as unconstitutionally vague and broad a statute including as an element the congregating with others "with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned." As construed by the Georgia courts, especially in the instant case, the Georgia provision as to breach of the peace is even broader than the Louisiana statute.

Thus, the Court must conclude that Georgia Code 26–6303 is unconstitutionally vague and broad, and the conviction therefor is set aside.

That portion of defendant's confinement attributable to a conviction under this statute must necessarily fall.

It is so ordered.