269 So.2d 450 (1972)
263 La. 809
CITY OF NEW ORLEANS
v.
Mallie LEWIS.
No. 51231.
Supreme Court of Louisiana.
November 6, 1972.
*451 John Wilson Reed, New Orleans, for petitioner.
Blake G. Arata, City Atty., Servando C. Garcia, III, Asst. City Atty., for respondent.
HAMLIN, Justice:
The United States Supreme Court, June 26, 1972, vacated the judgment of our Court of March 10, 1971 in City of New Orleans vs. Mallie Lewis, which recited: "Writ refused. The judgment of the lower court is correct." It remanded the cause to us for reconsideration in the light of Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). 408 U.S. 913, 92 S.Ct. 2499, 33 L.Ed.2d 321 (Mr. Chief Justice Burger, with whom Mr. Justice Blackmun and Mr. Justice Rehnquist joined, dissented.)
Mallie Lewis was issued a citation for reviling the police on January 3, 1970; she was tried in the First Municipal Court, City of New Orleans, and found guilty of violating Ordinance 828 MCS, Section 49-2, resisting arrest, and Section 49-7, reviling the police. She was thereafter sentenced to pay a fine of $10.00 or serve ten days in jail on each charge.[1]
An appeal was lodged in the Criminal District Court for the Parish of Orleans; that court affirmed the conviction and sentence.[2] Mallie Lewis then applied to this Court for writs, which, as stated supra, were refused. 257 La. 993, 244 So.2d 860. An appeal was taken to the United States *452 Supreme Court where defendant was granted the instant remand.
Herein, Mallie Lewis avers that the First Municipal Court, City of New Orleans, and the Criminal District Court for the Parish of Orleans erred in holding the reviling the police ordinance, 828 M.C.S. 49-7, constitutional.
Counsel for Mallie Lewis submits:
"The Ordinance involved here suffers from all the defects of the Georgia statute and more. There are not even in the New Orleans ordinance the requirements that the words be spoken `without provocation,' that the words `tend to cause a breach of the peace,' or that the words be spoken "in the presence" of the one spoken about. Like the Georgia statute the New Orleans ordinance sweeps within its proscription all forms of abusive and derogatory speech. Even more so than was the case with the Georgia statute, it is impossible to justify the ordinance under the narrow exception to free speech provided in Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).
"The New Orleans ordinance, 828 M.C.S. 49-7, must be found unconstitutional under Gooding v. Wilson, supra. Defendant Lewis' convictions for reviling the police and for resisting arrest must be reversed with instructions to discharge the defendant Lewis."
Counsel's constitutional attack of Section 49-7, 828 M.C.S., is based on alleged overbroadness and vagueness; the Section as certified by the Assistant Clerk of Council recites:
"Section 49-7. Cursing, etc., police prohibited.
"It shall be unlawful and a breach of the peace for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty. (Flynn's Digest 1896, art. 1363.)"
The City of New Orleans contends that due to prior decisions of the United States Supreme Court and to the particularized scope of Section 49-7, where "wanton" cursing and reviling of a police officer must occur while he is in the performance of his duty, the Section is not vague and overbroad as contended by defendant. It prays that the judgments of the lower courts upholding the constitutionality of Section 49-7 be affirmed.

I.
Initially, we shall discuss the case of Gooding v. Wilson. The defendant was convicted in the Georgia courts on two counts of using opprobrious words and abusive language in violation of Georgia Code Section 26-6303 which recited:
"Any person who shall, without provocation, use to or of another, and in his presence, opprobrious words or abusive language, tending to cause a breach of the peace . . . shall be guilty of a misdemeanor."
Habeas Corpus proceedings in the District Court for the Northern District of Georgia were taken, and the District Court held Georgia Code Section 26-6303 unconstitutionally vague and broad, 303 F.Supp. 952; it set aside the defendant's conviction. The Court of Appeals for the Fifth Circuit affirmed, 431 F.2d 855 (1970); the United States Supreme Court noted probable jurisdiction of the State's appeal; it affirmed.
In Gooding, the Supreme Court stated: "* * * In other words, the statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not be susceptible of application to protected expression. * * *" 92 S.Ct. at p. 1106. (Emphasis ours) The Court further stated: "* * * Our decisions since Chaplinsky have continued to recognize state power constitutionally to punish `fighting' words under carefully drawn statutes not also susceptible of application to protected expression, Cohen v. California, *453 supra, 403 U.S. [15], at 20, 91 S.Ct., [1780] at 1785, [29 L.Ed.2d 284]; Bachellar v. Maryland, 397 U.S. 564, 567, 90 S.Ct. 1312, 1314, 25 L.Ed.2d 570 (1970); see Street v. New York, 394 U.S. 576, 592, 89 S.Ct. 1354, 1365, 22 L.Ed.2d 572 (1969). We reaffirm that proposition today." 92 S.Ct. at pp. 1106-1107.
In affirming the District Court and the Court of Appeals, the United States Supreme Court concluded in Gooding v. Wilson as follows:
"We conclude that "[t]he separation of legitimate from illegitimate speech calls for more sensitive tools than [Georgia] has supplied.' Speiser v. Randall, supra, 357 U.S. [513], at 525, 78 S.Ct. [1332], at 1342. [2 L.Ed.2d 1460] The most recent decision of the Georgia Supreme Court, Wilson v. State, supra, in rejecting appellee's attack on the constitutionality of § 26-6303, stated that the statute `conveys a definite meaning as to the conduct forbidden, measured by common understanding and practice.' 223 Ga. [531], at 533, 156 S.E.2d [446], at 448. Because earlier appellate decisions applied § 26-6303 to utterances where there was no likelihood that the person addressed would make an immediate violent response, it is clear that the standard allowing juries to determine guilt `measured by common understanding and practice' does not limit the application of § 26-6303 to `fighting' words defined by Chaplinsky. Rather, that broad standard effectively `licenses the jury to create its own standard in each case.' Herndon v. Lowry, 301 U.S. 242, 263, 57 S.Ct. 732, 741, 81 L.Ed. 1066 (1937). Accordingly, we agree with the conclusion of the District Court, `[t]he fault of the statute is that it leaves wide open the standard of responsibility, so that it is easily susceptible to improper application.' 303 F.Supp., at 955-956. Unlike the construction of the New Hampshire statute by the New Hampshire Supreme Court, the Georgia appellate courts have not construed § 26-6303 `so as to avoid all constitutional difficulties.' United States v. Thirty-Seven (37) Photographs, supra, 402 U.S. [363], at 369, 91 S.Ct. [1400] at 1405. [28 L.Ed.2d 822].
"Affirmed."
We do not find Georgia Code Section 26-6303 as written and Section 49-7, 828 M.C.S. New Orleans, Louisiana, similar. The Georgia section provided that the prohibited language would have to tend to cause a breach of the peace. Sec. 49-7 provides that it shall be a breach of the peace to use the prohibited language toward or with reference to any member of the city police while in the actual performance of his duty. Our section is restricted to any member of the city police; it is narrow; it is specific.[3] The Georgia Section was not specific or narrow; it pertained "to or of another."

II.
There is a major difference between a member of the city police while in the actual performance of his duty and "another." Black's Law Dictionary, Revised Fourth Edition, 1968, defines a Police Officer as: "One of the staff of men employed in cities and towns to enforce the municipal police, i. e., the laws and ordinances for preserving the peace and good order of the community. Otherwise called `policemen.'" See, 62 C.J.S. Municipal Corporations § 568, p. 1090 et seq.; 47 Am.Jur. Sheriffs, Police, and Constables, Sec. 5, Peace Officers as Public Officers, p. 823 et seq.
*454 In Green v. City of Bennettsville, 197 S.C. 313, 15 S.E.2d 334, 336 (1941), the Supreme Court of South Carolina stated:
"`Policeman' has been defined as: `A member of the Police.' `Police' is defined: `An organized civil force for maintaining order, preventing and detecting crime, and enforcing the laws; the body of men by which the municipal laws and regulations of a city, town, or district are enforced.' Webster's Twentieth Century Dictionary, Unabridged. And again it is defined:
"`That species of superintendence by magistrates which has principally for its object the maintenance of public tranquility among the citizens. The officers who are appointed for this purpose are also called the police. * * *
"`The word police has three significations. The first relates to the measures which are adopted to keep order, the laws and ordinances on cleanliness, health, the markets, etc. The second has for its object to procure to the authorities the means of detecting even the smallest attempts to commit crime, in order that the guilty may be arrested before their plans are carried into execution and delivered over to the justice of the country. The third comprehends the laws, ordinances, and other measures which require the citizens to exercise their rights in a particular form." See, Wyndham v. United States, 197 F.Supp. 856 (D.C.1961).
"Policemen of a city or town are peace officers and a policeman is a public officer, whose duties relate to governmental functions of a municipality." Klam v. Boehm, 72 Idaho 259, 240 P.2d 484 (1952). "* * * the term `Policeman,' as that term is generally used and understood, means a person who is a member of an organized civil force for maintaining peace and order, preventing and detecting crime, and enforcing the law. A policeman of a city is a person who has been authorized and empowered by the city to perform duties which relate to its governmental function of maintaining peace and order." Tezeno v. Maryland Casualty Company, 166 So.2d 351, 356 (La.App.1964).
The above jurisprudence affirms that a police officer is a peace officer and that he keeps the peace; it stands to reason that wantonly cursing or reviling, or using obscene or opprobrious language toward or with reference to any police officer while in the actual performance of his duty is a breach of the peace. "The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others." Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, 1220.
Freedom of Speech is protected by the First and Fourteenth Amendments to the United States Constitution; however, the United States Supreme Court in National Ass'n for Advance, of Colored People v. Button, 83 S.Ct. at 341, stated: "The decisions of this Court have consistently held that only a compelling state interest in the regulation of a subject within the State's constitutional power to regulate can justify limiting First Amendment freedoms." The Court also stated in Feiner v. New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295, 300 (1950):
"This Court respects, as it must, the interest of the community in maintaining peace and order on its streets." Thus, as ably urged by counsel for the City of New Orleans, the City of New Orleans as an arm of the State has a compelling interest in preserving the efficient and effective operation of its police department which in turn provides for law and order on the streets. Wanton interference with a policeman while he is endeavoring to discharge his duties creates a threat to the community at large. Here, a vital State interest is in question, i. e., the efficient operation of an officer of the law while in the discharge of his duties. We find that protected speech *455 does not apply to Section 49-7 supra. The vital and compelling interest of the City of New Orleans justifies the prohibition of certain language to a member of the city police while in the actual performance of his duties.

III.
In California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), the United States Supreme Court said: "It is wellsettled that First Amendment rights are not immunized from regulation when they are used as an integral part of conduct which violates a valid statute." The Court further stated in Grayned v. City of Rockford, (1972) 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed. 2d 222, that: "The nature of a place, `the pattern of its normal activities, dictates the kinds of regulations of time, place, and manner that are reasonable.' * * * The crucial question is whether the manner of expression is basically incompatible with the normal activity of a particular place at a particular time. Our cases make clear that in assessing the reasonableness of regulation, we must weigh heavily the fact that communication is involved; the regulation must be narrowly tailored to further the State's legitimate interest. `Access to [the streets, sidewalks, parks, and other similar public places] for the purpose of exercising [First Amendment rights] cannot constitutionally be denied broadly. . . ." Free expression `must not, in the guise of regulation, be abridged or denied.'"
"Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or `fighting' wordsthose which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. `Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument.' Cantwell v. Connecticut, 310 U.S. 296, 309, 310, 60 S.Ct. 900, 906, 84 L. Ed. 1213, [1221] 128 A.L.R. 1352." Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031, 1035 (1942).[4] (Emphasis ours.)

IV.
Our consideration of the instant matter is made, as we have been directed by the United States Supreme Court, in the light of Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. *456 1103, 31 L.Ed.2d 408. In Gooding, as quoted supra, the Court recognized the doctrine of Chaplinsky as still alive and said that the Supreme Court's decisions have recognized State power as being able to punish constitutionally "fighting words."[5]
Section 49-7 supra recites that: "It shall be unlawful and a breach of the peace for any person wantonly to curse or revile or to use obscene or opprobrious language * * *." (Emphasis ours.) We find and believe that it is self evident that what is prohibited are "fighting words" which cannot enjoy the protection of the First and Fourteenth Amendments to the United States Constitution. We find that under the above authorities of the United States Supreme Court it was within the power of the City of New Orleans, an arm of the State, to regulate the conduct of any person towards a member of the city police while in the actual performance of his duty by prohibiting the use of "fighting words" to such policeman. Permitting the cursing or reviling of or using obscene or opprobrious words to a police officer while in the actual performance of his duty would be unreasonable and basically incompatible with the officer's activities and the place where such activities are performed. Wantonly cursing, reviling, or using obscene or opprobrious words are not protected means of communication. Prohibiting such is not a restraint of the area of public discussion; such prohibition will not render the citizenry incapable.[6] As found supra herein, we find that Section 49-7 is not offensive to protected speech; it is narrowed to "fighting words" uttered to specific persons at a specific time; it is not overbroad and is therefore not unconstitutional.
Georgia Code Section 26-6303 supra recited that "Any person who shall, without provocation, use to or of another, and in his presence, opprobrious words or abusive language, * * *." Section 49-7 prohibits "any person wantonly to curse or revile or to use obscene or opprobrious language * * *." (Emphasis ours.)
We find that the prohibitions of Section 49-7 are self explanatory; they are not vague. Any reasonable man knows what it is to wantonly curse or revile; our Section is not confined to "opprobrious words or abusive language," as was the Georgia statute.[7]The Section definitely does not sweep within its proscriptions all forms of abusive and derogatory speech. The proscriptions are narrow and specificwantonly cursing, reviling, and using obscene or opprobrious language.
We conclude that Section 49-7 is not vague; it is constitutional and meets the test of Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), an ascertainable standard.
Having thoroughly considered this cause in the light of Gooding v. Wilson, 405 U.S. *457 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), we now hold that Section 49-7, 828 M.C.S., New Orleans, Louisiana, is constitutional.
It is ordered and decreed for the reasons above assigned that Mallie Lewis' convictions and sentences be affirmed; the judgments of the First Municipal Court, City of New Orleans, and the Criminal District Court for the Parish of Orleans are affirmed.
BARHAM, J., dissents with written reasons.
TATE, J., dissents with written reasons.
DIXON, J., dissents and subscribes to the reasons enunciated in the dissent of TATE, J.
BARHAM, Justice (dissenting).
This case was remanded to us for consideration in light of Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). For the reasons assigned by the United States Supreme Court in that case we are required to declare the municipal ordinance, 828 M.C.S. 49-7, unconstitutional. I concur in Mr. Justice Tate's dissent.
TATE, Justice (dissenting).
The defendant was here convicted of violating a municipal ordinance which forbids reviling the police. She cursed the police after they had arrested her son.
A majority of this court initially denied supervisory review, rejecting the contention that the ordinance was unconstitutional on its face. 257 La. 993, 244 So.2d 860 (1971). The dissent expressed the view that the ordinance "is clearly unconstitutionally vague, overbroad and is an unlawful restriction upon freedom of speech". 244 So.2d 860.
The United States Supreme Court then granted certiorari and reversed this court. Lewis v. City of New Orleans, 408 U.S. 913, 92 S.Ct. 2499, 33 L.Ed.2d 321 (1972). The sole issue raised was that the ordinance is unconstitutional on its face. The high court remanded the case to us "for reconsideration in the light of Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed. 2d 408 (1972)". Despite this and the circumstance that the ordinance here in question is constitutionally deficient under the standard expressed by Gooding v. Wilson, the majority again affirms the conviction.
At issue here is the contention that an ordinance of the City of New Orleans violates the First Amendment (freedom of speech) protections of the United States Constitution. See also Louisiana Constitution of 1921, Article 1, Section 3.
The ordinance in question makes it "unlawful and a breach of the peace for any person wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the City Police while in the actual performance of his duty". Section 49-7, City of New Orleans (Adopted by Ordinance No. 828).
We should at this point note the following: Under the broad scope of the terms of the ordinance: The punishable speech includes (1) wantonly (recklessly) used "opprobrious"[1] language "with reference to" an officer engaged in the performancee of his duty, (2) which languagee need not be used in the presence of the officer[2], *458 (3) nor be of a nature tending to cause an immediate public disturbance nor used in such circumstances as likely to cause such a disturbance. Further, the punishable language need not interfere with the officer in the performance of his duty; it is sufficient only that the words be opprobrious with reference to the officer.[3]
Thus, for instance, a person sitting on a balcony overlooking the efforts of a policeman to direct traffic in the crowded French Quarter could, under the terms of the ordinance, be prosecuted for muttering, "Look at that stupid cop messing things up down there". The epithet may be used wantonly, in that it recklessly and willfully reviles the heroic efforts of the police officer. The language is punishable under the terms of the ordinance, even though the muttered opprobrious comment was overheard only by a bystanderwitness up on the balcony with the "reviler", and though the policeman and no one else heard the mutter, and though the muttered criticism did not at all interfere with the unaware policeman's conduct of his duties.
We should at this point note as unquestioned the basic American philosophy that freedom of speech protects us against criminal prosecution for criticizing or even using abusive or opprobrious language with regard to our public officials and our government. As noted in Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103 (1972), to which we were referred by the United States Supreme Court when it reversed our prior affirmance of this same conviction, even harsh insulting words cannot be punished except such as by their very utterance "tend to incite an immediate breach of the peace". 92 S.Ct. 1107.
In Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103 (1972), the United States Supreme Court held to be unconstitutional a Georgia statute punishing "any person who shall, without provocation, use to or of another, and in his presence . . . [4] oppropbrious words or abusive language, tending to cause a breach of the peace. . . ", 92 S.Ct. 1104. (Italics mine.) Since the Georgia statute (like the present ordinance) punished only spoken words, the Supreme Court noted that "It can therefore withstand appellee's attack upon its facial constitutionality only if, as authoritatively construed by the Georgia courts, it is not susceptible of application to speech, although vulgar or offensive, that is protected by the First and Fourteenth Amendments". 92 S.Ct. 1105.
The court pointed out that "the transcendent value to all society of constitutionally protected expression is deemed to justify allowing `attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.'" 92 S.Ct. 1105. The court explained: "This is deemed necessary because persons whose expression is constitutionally protected may well refrain from exercising their rights for fear of criminal sanctions provided by a statute susceptible of application to protected expression." 92 S.Ct. 1105.
The Georgia statute was invalid because it was not "narrowly drawn to apply only *459 to a constitutionally unprotected class of words'fighting' words'those which by their very utterance inflict injury or tend to incite an immediate breach of the peace'". 92 S.Ct. 1106. The court specifically pointed out that an enactment which permits criminal punishment of the use of "opprobrious" language overbroadly includes within its prohibition merely derogatory comments, not necessarily "fighting words". 92 S.Ct. 1107.
No authoritative Louisiana interpretation narrows the scope of this ordinance to include language tending to incite an immediate breach of the peace, "fighting words". In fact, quite the contrary is so. See footnote 2 and the majority opinion. The majority here holds that it may be made a criminal breach of the peace "wantonly" to use epithets or personal abuse with regard to a police officer while in the performance of his dutyindeed, this may be so, by a statute limited in application to those situations where the language creates the danger of an immediate public disturbance, but it overlooks that the present statute, under its terms, punishes not only words used in such context, but also non face-to-face or peaceful or even private expressions of opprobrious comments. The mother is punishable under the ordinance for using the disrespectful language in her own living room as well as in the street.
The circumstance that, under the ordinance, such epithets must be used "wantonly"that is, recklessly, willfully, see State v. Vinzant, 200 La. 301, 7 So.2d 917 (1942), 44A Words and Phrases, "Wanton"does not so narrow the language criminally punishable as to save this enactment from overbroadness. That the opprobrious language must be used "wantonly"recklessly, willfullydoes not deprive it of constitutional protection, where not uttered under circumstances likely to cause an immediate public disturbance. As a matter of fact, as interpreted by our state courts, the simple "cursing or using obscene language to any member of the New Orleans Police Department" has been regarded as wanton reviling which is punishable under the ordinance. See Footnote 2.
The ruling in Gooding v. Wilson is decisive of this case, as the United States Supreme Court indicated by ordering us to consider the present conviction in the light of that decision.
The language there used by the defendant to a Georgia police officer was "White s____ of a b ____, I'll kill you" and "You s ____ of a b ____, I'll choke you to death". See 92 S.Ct. 1112. In the present case, the mother called the police officer a "G ____ d____ m ____ f ____" police. The fact that the latter words used are shocking to the sensibilities of people of our generation does not by itself justify classifying such critical language as not protected by the constitution. See Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).
Whatever our personal views are as to what sort of language should or should not be punishable, this court is bound by our state and federal constitutions to enforce constitutional protection of individuals and their speech as interpreted by authoritative decisions of the nation's high court. That court has reversed us in the present case for not applying such principles announced by it. It has directed us to reconsider the present conviction in the light of Gooding v. Wilson. Gooding plainly indicates that the present ordinance is unconstitutionally overbroad on its face, just as was the quite similar Georgia statute in that case, in that it subjects to punishment constitutionally protected language as well as language not so protected.
The police, our front line soldiers in the battle against crime, deserve the respect and support of our officials and citizens. Nevertheless, ever since this nation fought for and obtained its freedom, it has not been a crime to curse or use opprobrious language about the public officers of our democratic republic. If, for instance, the present ordinance had made it a crime wantonly to curse or revile members of *460 the United States Supreme Court of of the state judiciary (or the Governor, or the legislators or any other public officer or servant), as well as the police, I am certain that not one of the majority would deem such an enactment constitutional. The right to criticize our public officers, be they judges or policemen, has, since our earliest days, been deemed a basic right of all Americans. The harshness or unfairness of language used in such critical commentary does not remove it from the protection of our constitution. Freedom of speech is protected not only for our newspapers and politicians, but also for our citizens on back streets of slum areas.
Although it is immaterial to the issue before us (since the enactment is invalid on its face), I must emphasize once again that the sole action of the defendant hereby punished was her use of obscene language toward the policemen after they had arrested her son. She is not being prosecuted for public obscenity. There is no suggestion in the limited record in this court that such language had any tendency to cause a fight or public disturbance or to interfere with the police in the performance of their duties.[5]
To repeat, the United States Supreme Court has reversed this court's prior rejection of the attack on the ordinance for being overbroad in scope and violative of the First Amendment.[6] It is not our function to refuse to apply the direct ruling of the nation's high court because we disagree with it. Orderly processes of adjudication and the rule of law suffer when an inferior tribunal refuses to follow the law as enunciated by a higher court.
I therefore respectfully dissent.
NOTES
[1] We do not have the record of the First Municipal Court before us, but Justice Lewis F. Powell, Jr., concurring in the remand of the United States Supreme Court stated, "* * * Here a police officer, while in the performance of his duty, was called. `G- -D- -M- -F- -' police."
[2] The judgment of the Criminal District Court for the Parish of Orleans recites in part:

"A review of the evidence in this case fully convinces this court that the defendant violated both Section 49-2 and 49-7 of Ordinance 828 M.C.S.
"Counsel for defendant, after the trial, filed a Motion in Arrest of Judgment, on the grounds that M.C.S. Section 49-7 was unconstitutional because `it is unconstitutionally vague and overbroad.' Section 49-7 defines in detail what shall constitute reviling the police and, therefore, is not vague or overbroad and the defendant by said ordinance is prohibited from cursing or using obscene language to any member of the New Orleans Police Department.
"The Motion in Arrest of Judgment was properly overruled by the lower court.
"The conviction and sentence of the lower court are affirmed."
[3] In National Ass'n for Advanc. of Colored People v. Button, the U. S. Supreme Court, 371 U.S. 415, 83 S.Ct. 328, p. 338, 9 L.Ed.2d 405, said: "* * * Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity. Cantwell v. Connecticut, 310 U.S. 296, 311, 60 S.Ct. 900, 906, 84 L.Ed. 1213."
[4] The statute involved in Chaplinsky, a New Hampshire statute, recited: "No person shall address any offensive, derisive or annoying word to any other person who is lawfully in any street or other public place, nor call him by any offensive or derisive name, nor make any noise or exclamation in his presence and hearing with intent to deride, offend or annoy him, or to prevent him from pursuing his lawful business or occupation." In upholding the statute, the United States Supreme Court stated:

"We are unable to say that the limited scope of the statute as thus construed contravenes the constitutional right of free expression. It is a statute narrowly drawn and limited to define and punish specific conduct lying within the domain of state power, the use in a public place of words likely to cause a breach of the peace. * * *
"Nor can we say that the application of the statute to the facts disclosed by the record substantially or unreasonably impinges upon the privilege of free speech. Argument is unnecessary to demonstrate that the appellations `damned racketeer' and `damned Fascist' are epithets likely to provoke the average person to retaliation, and thereby cause a breach of the peace."
[5] See also, Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284, wherein the Court stated: "This Court has also held that the States are free to ban the simple use, without a demonstration of additional justifying circumstances, of so-called `fighting words,' those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction. Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). * * *"
[6] In Cohen v. California, supra, the Court said of Free Speech: "* * * It is designed and intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us, in the hope that use of such freedom will ultimately produce a more capable citizenry and more perfect polity and in the belief that no other approach would comport with the premise of individual dignity and choice upon which our political system rests. * * *" 91 S.Ct. at p. 1788.
[7] The word "wantonly" does not appear; only the words "without provocation." Our ordinance provides for cursing or reviling or using obscene or opprobrious language. The Georgia statute is confined to opprobrous words or abusive language.
[1] As the United States Supreme Court noted in Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103 at 1107, under its definition "opprobrious" includes greater reach than "fighting words". (This was one reason the Georgia statute was declared unconstitutional.) The Court noted that Webster's New International Dictionary (1961) defines "opprobrious" as "conveying or intended to convey disgrace".
[2] See Chaplinsky v. New Hampshire, 315 U.S. 568, 573, 62 S.Ct. 766, 770, 86 L.Ed. 1031 (1942), saving from invalidity a statute since it did "no more than prohibit the face-to-face words plainly likely to cause a breach of the peace". (Italics mine.)
[3] As the majority notes (see its footnote 2), the Criminal District Court for the Parish of Orleans, with primary responsibility to review convictions under this ordinance, held that the statute is not vague or overbroad since it "defines in detail what shall constitute reviling the police", for by said ordinance the defendant was "prohibited from cursing or using obscene language to any member of the New Orleans Police Department." Under this meaning, the statute clearly offends the United States Constitution, see Gooding v. Wilson, cited above.
[4] Note that the Georgia statute here invalidated contains, unlike the municipal ordinance in question, the limitation that the offending language be used in the presence of the reviled person. All the more reason that the present municipal ordinance is unconstitutional. See Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766 (1942).
[5] It is to be noted that other statutes are available to punish conduct which actually hampers law enforcement. See, e. g., La.R.S. 14:108 (resisting an officer), La.R.S. 14:111 (assisting an escape), and La.R.S. 40:1390 (interference with state police officers in the performance of their duties.)
[6] On October 24, 1972, ___ U.S. ___, 93 S.Ct. 279, 34 L.Ed.2d 214, the United States Supreme Court again reversed a majority of this court's similar holding in City of New Orleans v. Martin, 260 La. 691, 257 So.2d 152 (1972) that the ordinance was constitutional.