MEIERHENRY, Justice.
[¶ 1.] In a trial to the court, Marcus J. Suhn was convicted of disorderly conduct for yelling profanities at a passing police car in Brookings, South Dakota. He appeals his conviction and contends that his utterances are protected speech under the First and Fourteenth Amendments to the United States Constitution. The State argues that Suhn’s utterances fall under the “fighting words” exception to First Amendment protection. We hold that Suhn’s words are protected speech and reverse.
FACTS
[¶ 2.] Suhn’s utterances occurred on September 2, 2007, at approximately 2:00 a.m. in Brookings, South Dakota. The bars on Brookings’ Main Avenue had just closed, and the bar patrons were gathering on the sidewalks outside the bars. Suhn was among an estimated 100 people gathered on the sidewalk. At this same time, two Brookings’ police officers patrolled Main Avenue in their vehicle. Officer David Gibson sat on the passenger seat of the vehicle. He had his window fully open as the vehicle approached the area where the sidewalk crowd was gathered.
[¶ 3.] As the patrol car passed the sidewalk crowd, Gibson heard Suhn yell obscenities in the direction of the police car. Specifically, Suhn yelled: “Fucking cop, piece of shit. You fucking cops suck. Cops are a bunch of fucking assholes.” Officer Gibson leaned out of the window of the police car and made eye contact with Suhn. He identified Suhn as the speaker. Gibson also observed that the others on the sidewalk had expressions of “what are you doing?” in response to Suhn’s comments.
[¶ 4.] Officer Gibson immediately left the patrol car and walked toward Suhn, who was then standing with his back to the patrol car. The officer grabbed Suhn by the arm and arrested him for his earlier utterance. Suhn was charged and convicted of disorderly conduct. Suhn appeals, raising one issue:
Whether the circuit court’s application of the disorderly conduct statute to Suhn’s utterances amounted to an abridgement of speech in violation of the First Amendment.
ANALYSIS
[¶ 5.] The State charged Suhn with disorderly conduct under SDCL 22-18-35(2). The relevant portion of the statute provides that “[a]ny person who intentionally causes serious public inconvenience, annoyance, or alarm to any other person, or creates a risk thereof by: ... (2) Making unreasonable noise; ... is guilty of disorderly conduct.” Id. (emphasis added). Suhn asserts that his disorderly conduct conviction violates his right to free speech under the First Amendment to the United States Constitution.[1] We review alleged violations of constitutional rights de novo. State v. Hayen, 2008 SD 41, ¶ 5, 751 N.W.2d 306, 308 (quoting State v. Muller, 2005 SD 66, ¶ 12, 698 N.W.2d 285, 288). The First Amendment to the United States Constitution provides that “Congress shall make no law ... abridging the freedom of speech.” US Const amend *548 I; amend XIV (imposing the right of free speech on the states). Emphasizing its importance, we have said that “[fjreedom of speech is one of our most cherished and zealously guarded Constitutional liberties.” State v. Martin, 2003 SD 153, ¶ 17, 674 N.W.2d 291, 297.

Fighting Words Unprotected by First Amendment

[¶ 6.] In Chaplinsky v. New Hampshire, the United States Supreme Court determined that First Amendment protection does not extend to all speech. 315 U.S. 568, 571-72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). Unprotected speech “include[s] the lewd and obscene, the profane, the libelous, and the insulting or ‘fighting’ words-those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.”[2] Id. at 572, 315 U.S. 568, 62 S.Ct. at 769, 86 L.Ed. 1031 (emphasis added). The Court said that these “well-defined and narrowly limited classes of speech” need not be afforded the same protection as other speech. Id. at 571-72, 315 U.S. 568, 62 S.Ct. at 769, 86 L.Ed. 1031. The Supreme Court reasoned that “such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.” Id. at 572, 315 U.S. 568, 62 S.Ct. at 769, 86 L.Ed. 1031 (citations omitted). The Court upheld the challenged New Hampshire law because the New Hampshire court narrowly construed the law to cover only words that had a “direct tendency to cause acts of violence by the person to whom, individually, the remark [was] addressed.” Id. at 573, 315 U.S. 568, 62 S.Ct. at 770, 86 L.Ed. 1031. The words had to be “what men of common intelligence would understand would be words likely to cause an average addressee to fight.” Id.
[¶ 7.] In decisions since the 1942 Chap-linsky decision, the United States Supreme Court has narrowed the “fighting words” doctrine.[3] The Court recognized that some “verbal tumult, discord, and even offensive utterance” is necessary for free expression and debate. Cohen v. California, 403 U.S. 15, 24-25, 91 S.Ct. 1780, 1788, 29 L.Ed.2d 284 (1971). In Cohen, the defendant was convicted of disturbing the peace for wearing a jacket bearing the words “Fuck the draft” to a California courthouse. Id. at 16, 403 U.S. 15, 91 S.Ct. at 1783-84, 29 L.Ed.2d 284. The Supreme Court per Justice Harlan reversed Cohen’s conviction and held that “while the particular four-letter word being litigated here is perhaps more distasteful than most others of its genre, it is nevertheless often true that one man’s vulgarity is another’s lyric.” Id. at 25, 403 U.S. 15, 91 S.Ct. at 1788, 29 L.Ed.2d 284.
[¶ 8.] The Cohen Court determined that the words “Fuck the draft” did not *549 rise to the level of fighting words because Cohen did not direct the epithet at any person in particular. Id. at 20, 403 U.S. 15, 91 S.Ct. at 1785-86, 29 L.Ed.2d 284. The Court explained that for speech to fit under the unprotected fighting words category, the speech, “when addressed to the ordinary citizen, [must be], as a matter of common knowledge, inherently likely to provoke violent reaction.” Id. at 20, 91 S.Ct. at 1785 (citing Chaplinsky, 315 U.S. at 572, 62 S.Ct. at 769, 86 L.Ed. 1031). The Court pointed out that the presence of unwilling listeners to an expletive did not justify a breach of the peace conviction “where ... there was no evidence that persons powerless to avoid appellant’s conduct did in fact object to it.” Id. at 22, 91 S.Ct. at 1786, 29 L.Ed.2d 284. The Cohen Court also emphasized the right of American citizens to criticize the government “ ‘not only [through] informed and responsible criticism but [through] the freedom to speak foolishly and without moderation.’ ” Id at 26, 403 U.S. 15, 91 S.Ct. at 1788, 29 L.Ed.2d 284 (quoting Baumgartner v. United States, 322 U.S. 665, 673-74, 64 S.Ct. 1240, 1245, 88 L.Ed. 1525 (1944)). In Gooding v. Wilson, the United States Supreme Court reaffirmed the constitutional restriction that laws punishing “fighting words” must be “carefully drawn statutes not also susceptible of application to protected expression....” 405 U.S. 518, 523, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408 (1972) (citations omitted). The Gooding Court struck down the Georgia statute because the Georgia lower court defined the term “breach of the peace” too broadly. Id. The Court said that the broad definition “makes it a ‘breach of peace’ merely to speak words offensive to some who hear them, and so sweeps too broadly.” Id. at 527, 92 S.Ct. at 1108, 31 L.Ed.2d 408.
[¶ 9.] Again in Lewis v. City of New Orleans, the United States Supreme Court struck down a city ordinance that made it a crime for a person “wantonly to curse or revile or to use obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty.” 415 U.S. 130, 132, 94 S.Ct. 970, 972, 39 L.Ed.2d 214 (1974) (quoting New Orleans Ordinance 828 MCS § 49-7). The Louisiana Supreme Court had ruled the ordinance constitutional because it was written narrowly to include only “ ‘fighting words’ uttered to specific persons at a specific time....” Id. at 132, 415 U.S. 130, 94 S.Ct. at 972, 39 L.Ed.2d 214 (quoting City of New Orleans v. Lewis, 263 La. 809, 826, 269 So.2d 450, 456 (1972)). The United States Supreme Court disagreed and held that because the law punished “only spoken words,” it was facially overbroad, and unconstitutional. “Fighting words,” the Lewis Court reiterated are “ ‘those (words) which by their very utterance inflict injury or tend to incite an immediate breach of the peace.’ ” Id. at 133, 94 S.Ct. at 972, 39 L.Ed.2d 214 (citing Gooding, 405 U.S. at 522, 92 S.Ct. at 1106, 31 L.Ed.2d 408).
[¶ 10.] In reference to Lewis, and Gooding, the Eighth Circuit Court of Appeals noted in Hammond v. Adkisson that “[i]t is now clear that words must do more than offend, cause indignation or anger the addressee to lose the protection of the First Amendment.” 536 F.2d 237, 239 (8th Cir.1976) (citations omitted). Hammond’s conviction was based on her verbal response to police officers. She said, “You m.f. son-of-a-bitches think you all can come out and do anything that you want to do.” Id. at 238. The Eighth Circuit Court of Appeals reversed her conviction because the trial court had determined that her words were “abusive and profane” but had not found that her words were “likely to incite the addressee to a violent reaction under the circumstances of the case.” Id. *550 at 239-40. Consequently, the Eighth Circuit Court of Appeals found that her response to the officers did not constitute “fighting words” and, therefore, was constitutionally protected speech. Id. at 240.
[¶ 11.] In In re S.J.N-K, our Court was also faced with the question of whether profanity and offensive gestures constituted “fighting words.” 2002 SD 70, ¶ 31, 647 N.W.2d 707, 714-15. In that case, a juvenile encountered his former middle school principal while the principal and his family were shopping at a local business. The juvenile directed the words “fuck you” accompanied with extending his middle finger at the principal, and drove his vehicle close to the principal’s vehicle as the principal was leaving the business’s parking lot. Id. ¶¶ 3-4, 647 N.W.2d at 709-10. We were unable to reach a consensus on whether the juvenile’s speech was constitutionally protected. Two Justices determined that the juvenile’s speech was not protected; one Justice joined in result but did not reach the question of whether the words and gestures without the conduct were protected speech; and two Justices dissented, finding the speech and conduct protected. Therefore, S.J.N-K. provides no precedent for the case before us.
[¶ 12.] Nevertheless, the United States Supreme Court has made it clear that in order for speech to fall within the “fighting words” exception, the words by their very utterance have to “tend to incite an immediate breach of the peace” under the circumstances of the case. Chaplinsky, 315 U.S. at 572, 62 S.Ct. at 769, 86 L.Ed. 1031. Suhn’s words do not meet the exception. Although it may not be necessary to show that those who hear the words are actually provoked to violence, a telling commentary as to how “ordinary citizens” would likely react was how the people standing on Main Avenue in Brook-ings did react. The crowd merely responded with facial expressions of disbelief.[4]
[¶ 13.] The circuit court’s findings do not support a conclusion that Suhn’s words were “fighting words.” The circuit court simply relied on its findings that one person might have “taken offense,” been sensitive to, or been “offended” by Suhn’s epithet to the police. In this context, the circuit court concluded that words constituted “fighting words,” unprotected by the First Amendment. We disagree. Just because someone may have been offended, annoyed, or even angered by Suhn’s words does not make them fighting words. As offensive or abusive as Suhn’s invective to the police may have been, “when addressed to the ordinary citizen,” Suhn’s words were not “inherently likely to provoke violent reaction.” See Cohen, 403 U.S. at 20, 91 S.Ct. at 1785, 29 L.Ed.2d 284 (citing Chaplinsky, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031). The circuit court erred in determining that Suhn’s utterances were unprotected speech.
[¶ 14.] We reverse.
[¶ 15.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.
[¶ 16.] SABERS, Justice, dissents.

. Suhn did not challenge the constitutionality of the statute, only its application.

. Suhn’s utterances do not fit under the “obscene” category of unprotected speech. Obscene speech "must be, in some significant way, erotic.” Cohen v. California, 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284 (1971) (citing Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)).

. Some courts and scholars have concluded that the two part definition of “fighting words” enunciated in Chaplinsky has since been reduced to only the second part of the definition, which only includes speech that “tend[s] to incite an immediate breach of the peace.” Purtell v. Mason, 527 F.3d 615, 623-24 (7th Cir.2008); see UWM Post, Inc. v. Bd. of Regents of Univ. of Wisconsin, 774 F.Supp. 1163, 1169-70 (E.D.Wis.1991); Smolla, Rodney A., Overview of current doctrine — Outdated categorical approach of Chaplinsky v. New Hampshire, 1 Smolla & Nimmer on Freedom of Speech § 2:70 (2008).

. In his dissent, Justice Sabers cites to City of Eastlake v. Kirkpatrick, 2007 WL 4485183 (OhioCtApp Dec 21, 2007) (unpublished). The circumstances in Kirkpatrick and the other referenced cases from the Ohio Court of Appeals are distinguishable from the circumstances here. In Kirkpatrick, it was “a very emotional situation for all parties involved.” Id. at *5. Further, in the other Ohio cases cited, a crowd at an abortion protest and a crowd surrounding a fight were similarly "excited or angered.” Id. (citing State v. Dickey, 75 Ohio App.3d 628, 600 N.E.2d 365 (1991); State v. Callahan, 48 Ohio App.3d 306, 549 N.E.2d 1230 (1989)). The crowd here was not excited, emotionally charged, or angered.