BACHELLAR ET AL. *v.* MARYLAND

No. 729. Argued March 2, 1970—Decided April 20, 1970

*Anthony G. Amsterdam* argued the cause for petitioners. With him on the brief was *Fred E. Weisgal.*

*H. Edgar Lentz,* Assistant Attorney General of Maryland, argued the cause for respondent. With him on the brief were *Francis B. Burch,* Attorney General, and *Edward F. Borgerding,* Assistant Attorney General.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

A jury in Baltimore City Criminal Court convicted petitioners of violating Md. Ann. Code, Art. 27, § 123 (1967 Repl. Vol.),[1] which prohibits "acting in a disorderly manner to the disturbance of the public peace, upon any public street . . . in any [Maryland] city . . . ."[2] The

---

[1] The trial in the Criminal Court was *de novo* upon appeal from a conviction in the Municipal Court of Baltimore. The Criminal Court judge sentenced each petitioner to 60 days in jail and a $50 fine.

[2] The statute was amended in 1968 but without change in the operative language involved in this case. See Md. Ann. Code, Art. 27, § 123 (c) (Supp. 1969).

prosecution arose out of a demonstration protesting the Vietnam war which was staged between 3 and shortly after 5 o'clock on the afternoon of March 28, 1966, in front of a United States Army recruiting station located on a downtown Baltimore street. The Maryland Court of Special Appeals rejected petitioners' contention that their conduct was constitutionally protected under the First and Fourteenth Amendments and affirmed their convictions. 3 Md. App. 626, 240 A. 2d 623 (1968). The Court of Appeals of Maryland denied certiorari in an unreported order. We granted certiorari, 396 U. S. 816 (1969). We reverse.

The trial judge instructed the jury that there were alternative grounds upon which petitioners might be found guilty of violating § 123. The judge charged, first, that a guilty verdict might be returned if the jury found that petitioners had engaged in "the doing or saying or both of that which offends, disturbs, incites or tends to incite a number of people gathered in the same area." The judge also told the jury that "[a] refusal to obey a policeman's command to move on when not to do so may endanger the public peace, may amount to disorderly conduct." [3] So instructed, the jury re-

---

[3] Both elements of the instruction were based on the Maryland Court of Appeals' construction of § 123 in *Drews* v. *Maryland*, 224 Md. 186, 192, 167 A. 2d 341, 343–344 (1961), vacated and remanded on other grounds, 378 U. S. 547 (1964), reaffirmed on remand, 236 Md. 349, 204 A. 2d 64 (1964), appeal dismissed and cert. denied, 381 U. S. 421 (1965). The instruction was "that disorderly conduct is the doing or saying or both of that which offends, disturbs, incites or tends to incite a number of people gathered in the same area. It is conduct of such nature as to affect the peace and quiet of persons who may witness it and who may be disturbed or provoked to resentment because of it. A refusal to obey a policeman's command to move on when not to do so may endanger the public peace, may amount to disorderly conduct."

The trial judge refused to grant petitioners' request that the jury be charged to disregard any anger of onlookers that arose from their

turned a general verdict of guilty against each of the petitioners.

Since petitioners argue that their conduct was constitutionally protected, we have examined the record for ourselves. When "a claim of constitutionally protected right is involved, it 'remains our duty . . . to make an independent examination of the whole record.' " *Cox* v. *Louisiana (I)*, 379 U. S. 536, 545 n. 8 (1965). We shall discuss first the factual situation that existed until shortly before 5 o'clock on the afternoon of the demonstration, since the pattern of events changed after that time. There is general agreement regarding the nature of the events during the initial period.

Baltimore law enforcement authorities had advance notice of the demonstration, and a dozen or more police officers and some United States marshals were on hand when approximately 15 protesters began peacefully to march in a circle on the sidewalk in front of the station. The marchers carried or wore signs bearing such legends as: "Peasant Emancipation, Not Escalation," "Make Love not War," "Stop in the Name of Love," and "Why are We in Viet Nam?" The number of protesters increased to between 30 and 40 before the demonstration ended. A crowd of onlookers gathered nearby and across the street. From time to time some of the petitioners and other marchers left the circle and distributed leaflets

---

disagreement with petitioners' expressed views about Vietnam. For example, the judge refused to instruct the jury that "if the only threat of public disturbance arising from the actions of these defendants was a threat that arose from the anger of others who were made angry by their disagreement with the defendants' expressed views concerning Viet Nam, or American involvement in Viet Nam, you must acquit these defendants. And if you have a reasonable doubt whether the anger of those other persons was occasioned by their disagreement with defendants' views on Viet Nam, rather than by the conduct of the defendants in sitting or staying on the street, you must acquit these defendants."

among and talked to persons in the crowd. The lieutenant in charge of the police detail testified that he "overheard" some of the marchers debate with members of the crowd about "the Viet Cong situation," and that a few in the crowd resented the protest; "[o]ne particular one objected very much to receiving the circular." However, the lieutenant did not think that the situation constituted a disturbance of the peace. He testified that "[a]s long as the peace was not disturbed I wasn't doing anything about it."

Clearly the wording of the placards was not within that small class of "fighting words" that, under *Chaplinsky* v. *New Hampshire,* 315 U. S. 568, 574 (1942), are "likely to provoke the average person to retaliation, and thereby cause a breach of the peace," nor is there any evidence that the demonstrators' remarks to the crowd constituted "fighting words." Any shock effect caused by the placards, remarks, and peaceful marching must be attributed to the content of the ideas being expressed, or to the onlookers' dislike of demonstrations as a means of expressing dissent. But "[i]t is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers," *Street* v. *New York,* 394 U. S. 576, 592 (1969); see also *Cox* v. *Louisiana* (*I*), *supra; Edwards* v. *South Carolina,* 372 U. S. 229 (1963); *Terminiello* v. *Chicago,* 337 U. S. 1 (1949), or simply because bystanders object to peaceful and orderly demonstrations. Plainly nothing that occurred during this period could constitutionally be the ground for conviction under § 123. Indeed, the State makes no claim that § 123 was violated then.

We turn now to the events that occurred shortly before and after 5 o'clock. The petitioners had left the marchers after half past 3 to enter the recruiting station. There they had attempted to persuade the sergeant in

charge to permit them to display their antiwar materials in the station or in its window fronting on the sidewalk. The sergeant had told them that Army regulations forbade him to grant such permission. The six thereupon staged a sit-in on chairs and a couch in the station.[4] A few minutes before 5 o'clock the sergeant asked them to leave, as he wanted to close the station for the day. When petitioners refused, the sergeant called on United States marshals who were present in the station to remove them. After deputizing several police officers to help, the marshals undertook to eject the petitioners.[5]

There is irreconcilable conflict in the evidence as to what next occurred. The prosecution's witnesses testified that the marshals and the police officers "escorted" the petitioners outside, and that the petitioners thereupon sat or lay down, "blocking free passage of the sidewalk." The police lieutenant in charge stated that he then took over and three times ordered the petitioners to get up and leave. He testified that when they remained sitting or lying down, he had each of them picked up bodily and removed to a patrol wagon. In sharp contrast, defense witnesses said that each petitioner was thrown bodily out the door of the station and landed on his back, that petitioners were not positioned so as to block the sidewalk completely, and that no police command was given to them to move away; on the contrary, that as some of them struggled to get to their feet, they were held down by the police officers until they were picked up and thrown into the patrol wagon. The evidence is clear, however, that while petitioners were on the sidewalk, they began to sing "We Shall

---

[4] Petitioners' conduct in the station is not at issue in this case, since the State did not prosecute them for their conduct in that place.

[5] The local police officers were deputized as marshals because their local police powers did not extend to the federally operated recruiting station.

Overcome" and that they were surrounded by other demonstrators carrying antiwar placards. Thus, petitioners remained obvious participants in the demonstration even after their expulsion from the recruiting station.[6] A crowd of 50–150 people, including the demonstrators, was in the area during this period.

The reaction of the onlookers to these events was substantially the same as that to the earlier events of the afternoon. The police lieutenant added only that two uniformed marines in the crowd appeared angry and that a few other bystanders "were debating back and forth about Bomb Hanoi and different things and I had to be out there to protect these people because they wouldn't leave." Earlier too, however, some of the crowd had taken exception to the petitioners' protest against the Vietnam war.

On this evidence, in light of the instructions given by the trial judge, the jury could have rested its verdict on any of a number of grounds. The jurors may have found that petitioners refused "to obey a policeman's command to move on when not to do so [might have endangered] the public peace." Or they may have relied on a finding that petitioners deliberately obstructed the sidewalk, thus offending, disturbing, and inciting the bystanders.[7] Or the jurors may have credited petitioners'

---

[6] The defense evidence indicated that petitioners were on the sidewalk after their removal from the recruiting station for only five minutes. A prosecution witness testified that they were there for 15 or 20 minutes.

[7] Maryland states in its brief, at 41–42, that "[o]bstructing the sidewalk had the legal effect under these circumstances of not only constituting a violation of . . . § 123 . . . but also of Article 27, § 121 of the Maryland Code, obstructing free passage." Had the State wished to ensure a jury finding on the obstruction question, it could have prosecuted petitioners under § 121, which specifically punishes "[a]ny person who shall wilfully obstruct or hinder the free passage of persons passing along or by any public street or highway . . . ."

testimony that they were thrown to the sidewalk by the police and held there, and yet still have found them guilty of violating § 123 because their anti-Vietnam protest amounted to "the doing or saying . . . of that which offends, disturbs, incites or tends to incite a number of people gathered in the same area." Thus, on this record, we find that petitioners may have been found guilty of violating § 123 simply because they advocated unpopular ideas. Since conviction on this ground would violate the Constitution, it is our duty to set aside petitioners' convictions.

*Stromberg* v. *California,* 283 U. S. 359 (1931), is the controlling authority. There the jury returned a general verdict of guilty against an appellant charged under a California statute making it an offense publicly to display a red flag (a) "as a sign, symbol or emblem of opposition to organized government," (b) "as an invitation or stimulus to anarchistic action," or (c) "as an aid to propaganda that is and was of a seditious character." *Id.,* at 361. This Court held that clause (a) was unconstitutional as possibly punishing peaceful and orderly opposition to government by legal means and within constitutional limitations. The Court held that, even though the other two statutory grounds were severable and constitutional, the conviction had to be reversed, because the verdict "did not specify the ground upon which it rested. As there were three purposes set forth in the statute, and the jury were instructed that their verdict might be given with respect to any one of them, independently considered, it is impossible to say under which clause of the statute the conviction was obtained. If any one of these clauses, which the state court has held to be separable, was invalid, it cannot be determined upon this record that the appellant was not convicted under that clause. . . . [T]he necessary conclusion from the manner in which the case was sent to the jury is that, if any

of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld." 283 U. S., at 368. See also *Williams* v. *North Carolina,* 317 U. S. 287 (1942); *Terminiello* v. *Chicago, supra; Yates* v. *United States,* 354 U. S. 298 (1957); *Street* v. *New York, supra.*

On this record, if the jury believed the State's evidence, petitioners' convictions could constitutionally have rested on a finding that they sat or lay across a public sidewalk with the intent of fully blocking passage along it, or that they refused to obey police commands to stop obstructing the sidewalk in this manner and move on. See, *e. g., Cox* v. *Louisiana (I), supra,* at 554–555; *Shuttlesworth* v. *Birmingham,* 382 U. S. 87, 90–91 (1965). It is impossible to say, however, that either of these grounds was the basis for the verdict. On the contrary, so far as we can tell, it is equally likely that the verdict resulted "merely because [petitioners' views about Vietnam were] themselves offensive to some of their hearers." *Street* v. *New York, supra,* at 592. Thus, since petitioners' convictions may have rested on an unconstitutional ground, they must be set aside.

The judgment of the Maryland Court of Special Appeals is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*