FACULTY *AD HOC* OCTOBER 15TH VIET NAM MORATOR-
IUM COMMITTEE, EDWARD L. WOLFE, ROSE PRIMACK
AND RODNEY GATES, FOR THEMSELVES AND ALL
OTHERS SIMILARLY SITUATED, PLAINTIFFS, v.
BOROUGH OF GLASSBORO, WILLIAM L. DALTON, AS
MAYOR OF BOROUGH OF GLASSBORO, COUNCIL OF
BOROUGH OF GLASSBORO, AND EVERETT WATSON,
POLICE CHIEF OF BOROUGH OF GLASSBORO, DE-
FENDANTS.

Superior Court of New Jersey
Chancery Division

Decided July 15, 1970.

*Mr. Arthur Frakt,* Chairman, American Civil Liberties Union of South Jersey, and *Mr. David H. Dugan, III,* Director, Camden Regional Legal Services, Inc, attorneys for plaintiffs (*Mr. Leonard H. Wallach,* of counsel).

*Mr. Milton L. Silver* for defendants.

WICK, J. S. C. This is an action to determine the validity of a municipal ordinance governing parade permits.

On October 15, 1969 a complaint was filed directly with this court seeking temporary and permanent restraints against certain public officials. The facts as represented in the complaint and affidavits were as follows. October 15, 1969 was designated by various groups throughout the country to be a day of petition and protest against the United States' involvement in Viet Nam. To participate in this event, various persons created plaintiff unincorporated association to organize a program for October 15 in and around

Glassboro State College in the Borough of Glassboro. One of the planned events was to be a parade or march from Hollybush on the Glassboro campus to the Pitman Armory.

Glassboro in 1968 adopted an ordinance titled "An ordinance regulating parades and other similar uses of public places and the issuance of permits and provide standards for the issuance thereof and prescribing penalties for violation thereof," which requires a permit to hold a parade. On October 3, 1969 application was made to the borough and to the State Department of Transportation for permission to hold the parade. The rules governing the filing of such applications were observed and no objection was made by either the mayor or chief of police. On October 10, 1969 the State Department of Transportation rejected the use of state highways for the parade without stating its reasons. On October 13 an amended application for a parade permit was filed with the chief of police which encompassed only local roads and did not require the State's approval. The police chief at that time commended the leaders on their planning of the march, leading them to believe the permit would be granted. At 8 P.M. on October 14 the borough council met to consider the parade permit and voted 5-1 to reject the application.

Since the ordinance specifically left the decision on such applications to the chief of police and public safety committee and provided for rejection to be given at least five days before the date of the parade, the court felt the late rejection to be arbitrary and violative of plaintiffs' rights. An injunction was issued staying the enforcement of the ordinance and ordering the officials to permit the parade.

Although the issue is now moot, both parties agreed to submit memoranda for a final determination by the court on the constitutionality of the ordinance. Since the Borough of Glassboro is a college town, there is a great likelihood that this same type of situation will arise again. The ordinance is therefore in need of interpretation to prevent future attacks upon it. The issue has been squarely presented and will be decided.

Section 4(B) of the ordinance sets forth information that must be included in the application for a parade permit. Subsections 1 to 12 require information on the leadership and organization conducting the parade, the date, time, size, route, etc., all directed towards allowing a determination of the effect of the parade on traffic, fire and ambulance service, police protection and other permissible considerations. Plaintiffs have no quarrel with these provisions but object to subsection 13 which provides for "Any additional information which the Chief of Police shall find reasonably necessary to a fair determination as to whether a permit should issue."

Plaintiffs' brief states, "The areas of legitimate inquiry concerning the holding of a parade are fully and exhaustively enumerated in Section B 1-12 of the Glassboro Parade Ordinance." The court disagrees. The municipality undoubtedly recognized that it could not foresee every type of situation that might arise and wished to allow the chief of police to ask certain questions to be able to judge those circumstances. For example, suppose an application was for a night parade, then the chief of police would want to know what lighting was going to be involved. If lighter than air floats were involved, their height might be important to determine clearance under bridges, traffic signals, etc. If the line of march was to be close to a hospital, then the type of noise instruments or sound apparatus would be a proper consideration.

The court feels that section 4(B)(13) is valid so long as it is read *in pari materia* with the provisions it follows. Plaintiffs fear this provision allows the chief of police to inquire as to the beliefs and principles of the organization holding the parade or the identities of the members of the organization. These factors are not relevant to the standards for issuance of the permit (section 5) and are not properly within the scope of section 4(B)(13). To be constitutional, section 4(B)(13) is interpreted to be limited to information bearing on whether or not a permit should issue, as set out by section 5.

Section 5 provides nine criteria to be observed in deciding whether a permit should issue. Such matters as traffic, fire and ambulance service, police protection, etc., are mainly involved, and with these plaintiffs have no concern. Only section 5(f) is contested, which provides:

The conduct of the parade is not reasonably likely to cause injury to persons or property, to provoke disorderly conduct or create a disturbance.

This provision can only be interpreted as allowing the public officials to reject a parade permit if they feel others may disagree with the views expressed and create a disturbance.

At one time such a provision would have been upheld as within the police power to prevent a public disturbance. *Thomas v. Casey*, 121 *N. J. L.* 185 (Sup. Ct. 1938), aff'd 123 *N. J. L.* 447 (E. & A. 1939), although *State v. Butterworth*, 104 *N. J. L.* 579 (E. & A. 1928), despite some of its language, suggests a different result, and *American League, etc., Hudson Cty. v. Eastmead*, 116 *N. J. Eq.* 487 (Ch. 1934), indicates a contrary position.

Whatever the law may have been at some time in the past, however, the more recent United States Supreme Court decisions make it clear that the constitutional right of free speech and assembly cannot be abridged simply because others may take offense at what is being said or advocated and create a disturbance. See *e. g. Bachellar v. Maryland*, 397 *U. S.* 564, 90 *S. Ct.* 1312, 25 *L. Ed.* 2d 570 (1970); *Street v. New York*, 394 *U. S.* 576, 89 *S. Ct.* 1354, 22 *L. Ed.* 2d 572 (1969); *Shuttlesworth v. City of Birmingham*, 394 *U. S.* 147, 89 *S. Ct.* 935, 22 *L. Ed.* 2d 162 (1969); *Gregory v. City of Chicago*, 394 *U. S.* 111, 89 *S. Ct.* 946, 22 *L. Ed.* 2d 134 (1969); *Brown v. Louisiana*, 383 *U. S.* 131, 86 *S. Ct.* 719, 15 *L. Ed.* 2d 637 (1966); *Cox v. Louisiana*, 379 *U. S.* 536, 85 *S. Ct.* 453, 13 *L. Ed.* 2d 471 (1965); *Edwards v. South Carolina*, 372 *U. S.* 229, 83 *S. Ct.* 680, 9 *L. Ed.* 2d 697 (1963); *Terminiello v. City of Chicago*, 337 *U. S.* 1, 69

*S. Ct.* 894, 93 *L. Ed.* 1131 (1949); *cf. Cantwell v. Connecticut*, 310 *U. S.* 296, 60 *S. Ct.* 900, 84 *L. Ed.* 1213 (1940). *N. J. Const.* (1947) Art. I, par. 6, provides that

Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right. No law shall be passed to restrain or abridge the liberty of speech or of the press.

And Art. I, par. 18, provides that

The people have the right freely to assemble together, to consult for the common good, to make known their opinions to their representatives, and to petition for redress of grievances.

The provision in question attempts to deny the constitutional rights of free speech and assembly to those espousing unpopular views and is therefore invalid.

In *Hague v. Committee for Industrial Organization*, 307 *U. S.* 496, 59 *S. Ct.* 954, 83 *L. Ed.* 1423 (1939), a Jersey City ordinance was held invalid which provided:

3. The Director of Public Safety is hereby authorized to refuse to issue said permit when, after investigation of all of the facts and circumstances pertinent to said application, he believes it to be proper to refuse the issuance thereof; provided, however, that said permit shall only be refused for the purpose of preventing riots, disturbances or disorderly assemblage. [307 *U. S.* at 503, 59 *S. Ct.* at 958, n. 1].

In ruling that the provision was unconstitutional the court said:

We think the court below was right in holding the ordinance quoted in Note 1 void upon its face. It does not make comfort or convenience in the use of streets or parks the standard of official action. It enables the Director of Safety to refuse a permit on his mere opinion that such refusal will prevent 'riots, disturbances or disorderly assemblage.' It can thus, as the record discloses, be made the instrument of arbitrary suppression of free expression of views on national affairs for the prohibition of all speaking will undoubtedly

'prevent' such eventualities. But uncontrolled official suppression of the privilege cannot be made a substitute for the duty to maintain order in connection with the exercise of the right. [*Id.* at 516, 59 *S. Ct.* at 964]

Section 5(f) of the present ordinance is similar to the ordinance construed in *Hague* and must be deemed invalid for placing too much discretion in a public official as condemned above and in *Shuttlesworth v. City of Birmingham, supra; Cox v. Louisiana, supra; Cox v. New Hampshire,* 312 *U. S.* 569, 61 *S. Ct.* 762, 85 *L. Ed* 1049 (1941).

The court directs defendants to repeal section 5(f) of the ordinance in question.