734 F.Supp. 849 (1990)
FORT WAYNE WOMEN'S HEALTH ORGANIZATION, Ulrich Klopfer, M.D. and Jane Doe(s), Plaintiffs,
v.
Wendell BRANE, Bryan J. Brown, Ellen Brown, Northeast Indiana Rescue, et al., Defendants.
Civ. No. F 90-66.
United States District Court, N.D. Indiana, Fort Wayne Division.
April 26, 1990.
*850 Alan M. Pollock, Pollock & Greene, New York City, Arnold H. Duemling, M.P. Smith & Associates, Fort Wayne, Ind., for plaintiffs.

ORDER
WILLIAM C. LEE, District Judge.
This matter is before the court on plaintiffs' "Verified Motion for a Temporary Restraining Order and Preliminary Injunction" filed on April 25, 1990. This motion was filed with a complaint in which plaintiffs seek to enjoin defendants from various activities at the Fort Wayne Women's Health Organization facility located at 827 Webster Street, Fort Wayne, Indiana, which activities are alleged to be unlawful.
In support of their motion, plaintiffs have filed the affidavit of Susan Hill in which she states that Michael McAlexander, Fort Wayne Public Safety Director, told her that the defendants have informed McAlexander that they intend to conduct "the grand-daddy of all rescues" at the Fort Wayne Women's Health Organization and that the "rescue" will involve over a thousand people blocking the entrance of the Women's Health Organization facility in an effort to close it down for an entire day and is anticipated to occur sometime in early May, 1990.
An ex parte temporary restraining order is an extraordinary remedy which will not be granted unless the movant clearly shows that such relief is warranted. See Piedmont Heights Civic Club, Inc. v. Moreland, 637 F.2d 430 (5th Cir.1981); Penn v. San Juan Hospital, 528 F.2d 1181 (10th Cir.1975). Rule 65 of the Federal Rules of Civil Procedure governs the granting of ex parte temporary restraining orders. Paragraph (b) of that rule states that a temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if "(1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required." F.R.C.P. 65(b). With respect to sub-paragraph 1 of rule 65, it should be noted that the standards which a district court must apply when determining whether a temporary restraining order is appropriate are analogous to the standard applicable when determining whether preliminary injunctive relief is appropriate although a "higher showing [is] contemplated by Rule 65(b)." Levas v. Village of Antioch, 684 F.2d 446, 448 (7th Cir.1982); see also 11 Wright and Miller Federal Practice and Procedure § 2951.
Having thoroughly reviewed the plaintiffs' filings in this matter, it is clear to this court that it must deny plaintiffs' *851 request for a temporary restraining order. It appears that the only grounds in support of plaintiffs' request for the extraordinary relief of a temporary restraining order is the double hearsay statement relayed to the plaintiffs from Michael Alexander and made by an unnamed person. Furthermore, the hearsay allegation threatens an apparently unlawful "rescue" which will occur sometime in "early May, 1990". Because the Court's calendar will permit this court to conduct a hearing on plaintiffs' request for a preliminary injunction prior to the occurrence of any alleged "rescue", there is no urgent need to grant the temporary relief requested at this time.
Because there are substantial constitutional issues which must be addressed in determining the propriety of restraining defendants' activities, this court will not address those issues at this time without giving the defendants the opportunity to be heard. Thus, this court now denies plaintiffs' request for the extraordinary relief of a temporary restraining order because plaintiffs fail to show that they will suffer immediate and irreparable harm before the defendants have an opportunity to be heard as required by Rule 65(b)(1).
The Court should emphasize the narrow basis for this ruling, to wit: that there is apparently time to conduct a hearing before any harm may occur to plaintiffs. If plaintiffs are able to demonstrate to the Court that the activities alleged are going to occur prior to the holding of any hearing, this court will not hesitate to order immediate and effective relief.
This is not the first time that this court has been asked to address the underlying issues presented in this case. In Fort Wayne Women's Health Organization, Inc., et al. v. Nurses Concerned for Life, Inc., et al., Cause No. F79-9, Judge Eschbach had occasion to address some of the principles which must guide an analysis of these issues. At the outset of this litigation, it would be useful for both parties to be reminded of those principles. Since the undersigned, in attempting to give this matter expedited treatment, has neither the time nor the inclination to improve on Judge Eschbach's scholarly analysis (assuming that to be possible), the following passage from his order of August 30, 1979 is presented for the parties' guidance:
The larger issues which must be determined in this case involve the protection of the constitutional rights of citizens who possess contradictory beliefs regarding abortion. This court has no authority to, and does not adjudicate the many serious moral and philosophical questions regarding abortion. Those value judgments must be made by the individual citizens in accord with the dictates of their consciences. The right of certain citizens to maintain and advocate beliefs opposing all abortion and to publicize their position against contrary views is grounded in the first amendment to the United States Constitution. Police Department of Chicago v. Mosley, 408 U.S. 92, 92 S.Ct. 2286 [33 L.Ed.2d 212] (1972); Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294 [33 L.Ed.2d 222] (1972); Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780 [29 L.Ed.2d 284] (1971); Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733 [21 L.Ed.2d 731] (1969); Shuttlesworth v. Birmingham, 394 U.S. 147, 89 S.Ct. 935 [22 L.Ed.2d 162] (1969); Cox v. Louisiana, 379 U.S. 536, 85 S.Ct. 453 [13 L.Ed.2d 471] (1965); Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680 [9 L.Ed.2d 697] (1963). These beliefs, deeply and sincerely held, are grounded in moral and religious values as fundamental as life itself. Those who entertain such beliefs must be free not only to believe but to advocate and promote those beliefs within the law. Their rights to do so must not be unduly restricted or encroached upon by this or any other court. Nor may any other citizen or group of citizens unlawfully deny them such right. Erznoznik v. Jacksonville, 422 U.S. 205, 95 S.Ct. 2268 [45 L.Ed.2d 125] (1975); Papish v. Board of Curators of the University of Missouri, 410 U.S. 667, 93 S.Ct. 197 [1197] [35 L.Ed.2d 618] (1973); Cohen v. California, supra; Tinker v. Des Moines Independent Community School District, *852 supra; Cox v. Louisiana, supra; Collin v. Smith, 578 F.2d 1197 (7th Cir. 1978).
On the other hand, those who share a view favoring abortion are protected in maintaining and advocating such belief by the same constitutional provision which protects the rights of those opposed. Grayned v. City of Rockford, supra; Cohen v. California, supra; Bachellar v. Maryland, 397 U.S. 564, 90 S.Ct. 1312 [25 L.Ed.2d 570] (1970); United States v. Radio Television News Directors Association, 395 U.S. 367, 89 S.Ct. 1794 [23 L.Ed.2d 371] (1969); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243 [22 L.Ed.2d 542] (1969); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678 [14 L.Ed.2d 510] (1965). And those who seek to undergo abortions within the confines of the law find their rights protected by the Constitution. The United States Supreme Court has recognized that a right of personal privacy exists under the Constitution. The roots of that right are found in the First, Fourth, Ninth and Fourteenth Amendments. `This right of privacy ... is broad enough to encompass a woman's decision whether or not to terminate her pregnancy.' Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 739 [35 L.Ed.2d 147] (1973). Cf. Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739 [35 L.Ed.2d 201] (1973). Thus, those who share and advocate opposing values and beliefs all find their rights preserved and protected in the same Constitution. Erznozkik v. City of Jacksonville, supra; Healy v. James, 408 U.S. 169, 92 S.Ct. 2338 [33 L.Ed.2d 266] (1972); Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339 [17 L.Ed.2d 235] (1966); New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710 [11 L.Ed.2d 686] (1964); Wood v. Georgia, 370 U.S. 375, 82 S.Ct. 1364 [8 L.Ed.2d 569] (1962).
This presents no danger to our society so long as citizens dare to differ but respect the rights of others. `[E]rror of opinion may be tolerated where reason is left free to combat it.' T. Jefferson, First Inaugural Address, March 4, 1801.[1] The real danger first begins to appear when any group of believers concludes that their beliefs are the only true ones and constitute the `greater good.' That danger is further nourished by those few within the groups who, having determined the superiority of their own beliefs, then pursue by illegal methods the suppression or elimination of all conflicting viewpoints. Abraham Lincoln expressed this concern:
What constitutes the bulwark of our own liberty and independence? It is not our frowning battlements, our bristling sea coast, our army and our navy. These are not our reliance against tyranny. All of those may be turned against us without making us weaker for the struggle. Our reliance is in the love of liberty which God has planted in us.... Destroy this spirit and you have planted the seeds of despotism at your own doors.... Accustomed to trample on the rights of others, you have lost the genius of your own independence and become the fit subjects of the first cunning tyrant who rises among you. (Speech, Edwardsville, Illinois, September 11, 1858).
Once the effort is made to suppress or eliminate all conflicting beliefs or practices through intimidation, threats and the use of force, then the protection of all beliefs, both popular and unpopular, is in danger. Then no believer or group of believers may be sure of the protections our Constitution now affords. `The day that this country ceases to be free for irreligion, it will cease to be free for religion....' Zorach v. Clausor [Clauson], 343 U.S. 306, 325 [72 S.Ct. 679, 689, 96 L.Ed. 954] (1952) (Jackson, J., dissenting).
Our republic and the fabric of the Constitution which holds it together is founded on the premise of a society that is strong enough to tolerate all points of *853 view as they relate to morals, philosophy, politics, government and the society itself.
`[I]f there is any principle of the Constitution that more imperatively calls for attachment than any other it is the principle of free thought  not free thought for those who agree with us but freedom for the thought we hate.' United States v. Schwimmer, 279 U.S. 644, 654-55 [49 S.Ct. 448, 451, 73 L.Ed. 889] (1928) (Holmes, J., dissenting).
Our nation has been described as a `melting pot' not only because our people spring from many varied cultures and national origins but because they bring with them differing beliefs about all of the great social and moral concerns of mankind. Over the years this heritage has been one source of our nation's strength. Our Constitution was designed to promote and protect the kind of social and governmental environment essential to a people with such varied beliefs and cultures. See THE FEDERALIST NO. 10 (J. Madison). The preservation of our constitutional system requires the continued recognition and protection of the rights of all of our citizens  not just those in the majority or those whose beliefs are the more popular at any given time. No group in our society is free to force its dogma or belief upon those who do not share their view. Nor are they free to prevent the lawful pursuit of differing beliefs through violence or the threat of violence. `There is no fit grievance that is a fit object of redress by mob law.' A. Lincoln, Address, Springfield, Illinois, January 27, 1838. Herein lies the real threat to a constitutional system such as our own. If the beliefs of a single citizen and the practice of those beliefs as protected by the Constitution can be eroded or unlawfully demeaned today, then whose rights will be protected tomorrow?
Although the personnel of this court has changed since these words were written, the principles expressed remain unchanged and the parties should be guided accordingly.

Conclusion
Plaintiffs' request for a temporary restraining order is hereby DENIED. The plaintiffs' request for a preliminary injunction is now scheduled for a hearing on May 3, 1990 at 9:00 A.M. The parties and their counsel shall appear at a pre-hearing conference in open court on May 1, 1990 at 2:00 P.M. Counsel for plaintiffs shall forthwith serve a copy of this order on defendants and any counsel for defendants that plaintiffs' counsel has been able to identify.
NOTES
[1] The court expresses no view whatever in the context of this case as to which opinion or belief may be error. (Footnote in original order).