RICHARD S. ARNOLD, Circuit Judge.
This is an appeal from a preliminary injunction enjoining the enforcement of an ordinance of the City of Lincoln, Nebraska. The ordinance seeks to restrict to certain areas the “focused picketing” of churches and other religious premises thirty minutes before, during, and thirty minutes after any scheduled religious activity. The District Court[1] held that the ordinance was facially invalid because it violated the Free Speech Clause of the First Amendment. For substantially the same reasons given in the District Court’s thorough Memorandum and Order, we affirm.
I.
The plaintiffs are four individuals who have engaged in demonstrations opposing abortion in the vicinity of Westminster Presbyterian Church in Lincoln, Nebraska. The plaintiffs believe that abortion is wrong, and they object to the appointment of Winston Crabb, M.D., a physician who performs abortions, as a deacon and elder in the church. The plaintiffs have engaged in protests and demonstrations on the public sidewalk that adjoins the church, carrying signs which read, “Winston Crabb, Abortionist and Elder,” “1 Corinthians 5:13,” “Dr. Crabb is Unfit to be an Elder,” “Jesus Loves the Little Children,” and “Life.” Other protesters (not the plaintiffs) have demonstrated near the church with other kinds of signs, including graphic representations of aborted fetuses. The church objected to all of these demonstrations, and eventually these objections came to the attention of the Lincoln City Council. The Council then passed the ordinance at issue in this case, City of Lincoln Ordinance No. 17413 (September 21,1998). The Mayor of Lincoln, Mike Johanns, vetoed the ordinance, but the Council overrode his veto, and the ordinance became law as Section 9.20.090 of the Lincoln Municipal Code.
The ordinance at issue states, in pertinent part:
Section 1. Legislative Intent and Findings..
(a) It is the intent of this ordinance to preserve the peace at religious premises in order to protect and secure several significant and compelling interests of this city. Those interests include the health, safety and welfare of all the citizens and especially of children, all citizens’ freedoms of expression, assembly, association and religion, and the ordinary, good public order of the community-
id) ... This ordinance restricts a particular manner of picketing defined herein as focused picketing, and only when performed in specified time periods and in specified places in close proximity to religious premises, for the reason that without a reasonable buffer zone of time and space, focused picketing disrupts *1179 and endangers or outright destroys individual freedom of religion.
(e) The mechanism of such injury to individual freedom of religion operates as follows: infants and young children are emotionally vulnerable to focused picketing in close proximity to them, which is a typical characteristic of focused picketing at religious premises, and many of these children tend to react with fear, unhappiness, anxiety and other emotional disturbance when such activity is imposed on them. Families with infants and young children who must pass through the ring of focused picketing in order to attend or leave religious activities are for the time of entrance to the time of departure, captive audiences. Their option of foregoing their worship or other religious activity on the one hand, or risking pain and injury to their children on the other, amounts to a substantial and intolerable burden on their personal religious freedom.
Section 2. ...

9.20.090 Disturbing the Peace by Focused Picketing at Religious Premises.

(a) Definitions. ...
(3) The term “focused picketing” shall mean “the act of one or more persons stationing herself, himself or themselves outside religious premises on the exteri- or grounds, or on the sidewalks, streets or other part of the right of way in the immediate vicinity of religious premises, or moving in a repeated manner past or around religious premises, while displaying a banner, placard, sign or other demonstrative material as a part of their expressive conduct.” The term “focused picketing” shall not include distribution of leaflets or literature.
(b) It shall be deemed an unlawful disturbance of the peace for any person intentionally or knowingly to engage in focused picketing of a scheduled religious activity at any time within the period from one-half hour before to one-half hour after the scheduled activity, at any place (1) on the religious organization’s exterior premises, including its parking lots; or (2) on the portion of the right of way including any sidewalk on the same side of the street and adjoining the boundary of the religious premises, including its parking lots; or (3) on the portion of the right of way adjoining the boundary of the religious premises which is a street or roadway including any median within such street or roadway; ...
Thus, the ordinance purports to make it unlawful for anyone to stand or walk on public sidewalks or rights of way adjoining religious premises, if that person is displaying a banner, placard, or sign, at certain specified times. It does not matter whether children are the target of this activity, or even whether they are present at any particular time. Nor does it matter whether the words or pictures on the banner, placard, or sign are in any way gruesome or repulsive to children, or, instead, completely benign and bland.
II.
It is undisputed that peaceful picketing is an expressive activity protected by the First Amendment. In addition, the areas identified by the ordinance, such as sidewalks and public rights of way, “have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.” Hague v. CIO, 307 U.S. 496, 515, 59 S.Ct. 954, 83 L.Ed. 1423 (1939) (opinion of Roberts, J.). Consequently, these places are regarded as public fora, and the government’s ability to regulate speech in such places is limited.
In these quintessential public forums, the government may not prohibit all communicative activity. For the State to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve *1180 that end.... The State may also enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.
Perry Education Assoc. v. Perry Local Educators’ Assoc., 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (citations omitted).
The City claims that the ordinance is constitutionally valid because it is a content-neutral, narrowly tailored limitation on the time, place, and manner of speech designed to protect significant government interests. The City has identified three such interests: 1) the protection of the well-being of young children exposed to focused picketing; 2) the preservation of the right of its citizens to exercise their religion; and 3) the maintenance of public safety.
Like the District Court, we assume without deciding that the ordinance is a content-neutral regulation. Further, we agree with the District Court that “the city’s interest in protecting very young children from frightening images is constitutionally important; that is, the interest is ‘significant,’ ‘compelling,’ and ‘legitimate.’ ” 23 F.Supp.2d at 1100 (footnote omitted). That is as far as the City’s legitimate interest goes, however. As the District Court said:
Assuming the images are not gruesome, I do not agree that the City has a legitimate interest in shielding young children from the mere presence of persons carrying signs on the sidewalk. Absent a picture of a dead body or the like, there is no credible and unbiased evidence that the mere presence of a sign-carrying antiabortion protestor harms young children.
Id. at 1100 n. 9. There was testimony, offered by the City, that contradicts this finding, but it is for the District Court, in the first instance, to determine what evidence is credible, and its resolution of this issue of fact is not clearly erroneous.
The question is whether the ordinance is a “narrowly tailored” effort to protect the legitimate interest identified by the District Court. The answer is plainly no. The ordinance purports to make the carrying of signs at the indicated times and places unlawful, no matter what the signs say or depict, and this prohibition is much broader than necessary to protect the psychological interest of young children as found by the District Court. Moreover, the ordinance prohibits communication with adults as well as with children. While most of the adults attending the Westminster Presbyterian Church probably do not like the signs and disagree with them, that is hardly a sufficient basis, under the First Amendment, to justify what the City is attempting to do here. Expressive communication is frequently upsetting, even abrasive. The protection of such robust debate is at the core of the First Amendment. Finally, the ordinance bans certain forms of communication even if all of those to whom it is directed in fact wish to hear it. In sum, the ordinance bans speech directed at adults, and is not narrowly tailored to prohibit only that sort of speech that would be psychologically damaging to children. For further elaboration, see 23 F.Supp.2d at 1100-1102.
The City also claims that it has a legitimate interest in preserving the right of its citizens to exercise their religion freely. Such an interest, in the abstract, is undoubtedly substantial and important. If, for example, anti-abortion protestors were to attempt to enter a church without permission, or to interrupt church services with their own speech, the city could doubtless prosecute them under a general trespass or disturbing-the-peace provision, or, if necessary, adopt a more specific prohibition directed against disturbing or interrupting services of worship. The present ordinance goes way beyond that. It goes beyond the church building and church property, and seeks to *1181 forbid peaceful communication on property belonging to the public, even though the communication may be completely truthful, and even though there is absolutely no physical interference with access to the church.
What we have said in the context of another series of demonstrations against the status quo is relevant here. In Action v. Gannon, 450 F.2d 1227 (8th Cir.1971) (en banc), we dealt with protests conducted by members of the black community against a predominantly white church in St. Louis. In the course of that opinion, which was rendered by the Court en banc, we drew a distinction between the illegitimacy of actually intruding on church premises to disrupt services, and the First Amendment right to demonstrate peacefully, even when the demonstrations occur in the vicinity of a church.
Speaking through Judge Heaney, the en banc Court held as follows:
The defendants have a right to voice their opinion that the plaintiffs have not fulfilled their obligation to the black community. The defendants also have a right to make requests upon the plaintiffs if such requests are not joined with threats to disrupt church services and are not otherwise unlawful. The fact that the requests or opinions may be offensive to the parishioners does not render them outside the protection of the First Amendment. Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); Bachellar v. Maryland, 397 U.S. 564, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970); Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969). As the Supreme Court has said:
“ ... [A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, ... is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest....”
Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949).
The defendants also have a right to engage in peaceful pamphleteering and picketing on public property, so long as they do not “unduly interfere with the normal use of the public property by other members of the public with an equal right of access to it.” Amalgamated Food Employees Union Local 590 v. Logan Valley Plaza, Inc., 391 U.S. 308, 320, 88 S.Ct. 1601, 1609, 20 L.Ed.2d 603 (1968), and cases cited therein, provided, of "course, that they, do not interfere with those entering or leaving the church.
Id. at 1232-33 (footnote omitted).
The City suggests that this passage in our Action opinion was dictum, but we cannot agree. The District Court had issued an injunction to protect the rights of churchgoers. In the main, we affirmed, but we directed the District Court, on remand, to revise the injunction to make it consistent with the views stated in the opinion, including the quoted passage. See id. at 1238. The opinion was joined by five of the six members of the en banc Court, one judge choosing to concur only in the result. Thus, this Court in Action upheld the same First Amendment right to picket on public property near a church that plaintiffs in the present case seek to vindicate.
The City cites Frisby v. Schultz, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988), in which an ordinance prohibiting focused picketing before or about a resi- *1182 denee or dwelling was upheld by the Supreme Court, if limited to picketing occurring in front of a particular residence. Such a prohibition, the Court held, was narrowly tailored to the protection of residential privacy, which is a significant governmental interest. We cannot agree with the City that churches are indistinguishable from private residences for this purpose. As the Supreme Court said in Frisby, 487 U.S. at 484, 108 S.Ct. 2495 “the home is different,” and, in our view, unique. Allowing other locations, even churches, to claim the same level of constitutionally protected privacy would, we think, permit government to prohibit too much speech and other communication. We recognize that lines have to be drawn, and we choose to draw the line in such a way as to give the maximum possible protection to speech, which is protected by the express words of the Constitution.
Finally, the City asserts an interest in public order, which we take to mean, in the present context, maintaining the streets free of obstructions or distractions to traffic. Certainly this interest could, in some circumstances, be sufficient to justify some regulation of speech. The City could, for example, prohibit someone with a sign from standing in the middle of a street. No doubt the City of Lincoln has other ordinances prohibiting exactly that. The present ordinance goes far beyond such an effect. It extends to sidewalks and public rights of way, and is not limited to signs that would, on account of their size or attractiveness, be a distraction to motorists.
To summarize: If we assume, in accordance with the City’s arguments, that the ordinance is content-neutral, it still cannot be upheld. The ordinance is not narrowly tailored to the protection of any significant governmental interest established by the record before us. We therefore agree with the District Court that the ordinance is unconstitutional on its face, and the order of that Court, granting the plaintiffs’s motion for a preliminary injunction, is
Affirmed.

. The Hon. Richard G. Kopf, United States District Judge for the District of Nebraska. The opinion of the District Court is reported at 23 F.Supp.2d 1091 (D.Neb.1998).